IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

EVANSTON INSURANCE
COMPANY,

     Plaintiff /Counter-
     Defendant,

v.

DCM CONTRACTING, INC.,
CHRIS MARTIN, individually,
and TURNING POINT CHURCH,
INC.,

     Defendants/Counter-
     Plaintiffs.

CIVIL ACTION FILE

NO. 3:19-cv-19-TCB

## O R D E R

## I.   Background

On February 27, 2019, Plaintiff Evanston Insurance Company

filed this action seeking a declaratory judgment that it has no duty to

defend or indemnify Defendants DCM Contracting or its principal,

Chris Martin (collectively "DCM") under three commercial general

liability ("CGL") policies issued to DCM Contracting. The underlying

lawsuit filed by Defendant Turning Point Church against DCM seeks damages for DCM's alleged negligent failure to construct a building in a fit and workmanlike manner, negligent misrepresentation of its ability to construct a building in a fit and workmanlike manner, breach of contract, and breach of implied duty to construct a building in a fit and workmanlike manner.

Evanston issued three CGL policies to DCM between May 2016 and 2019. The policies provide in part:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \* \*

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit as follows:**

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)    How, when and where the "occurrence" or offense took place;
(2)    The names and addresses of any injured persons and witnesses; and
(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

2

    b.    If a claim is made or "suit" is brought against any insured, you must:

        (1)    Immediately record the specifics of the claim or "suit" and the date received; and

        (2)    Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.    You and any other involved insured must:

        (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)    Authorize us to obtain records and other information;

        (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.    Legal Action Against Us**

No person or organization has a right under this Coverage Part:

3

   a.  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b.  To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

\* \* \* \*

[1-2] at 28; [1-3] at 30; [1-4] at 30.

Coverage A provides:

SECTION I – COVERAGES
COVERAGE A – BODILY INJURY AND PROPERTY
DAMAGE LIABILITY

1.  Insuring Agreement

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any

4

"occurrence" and settle any claim or "suit" that may result. But:

* * * *

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period; and

        (3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * * *

    d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

5

(1)    Reports all, or any part, of the "bodily injury" or "property Damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * * *

[1-2] at 18; [1-3] at 20; [1-4] at 20.

The policies also contain various definitions, including:

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * * *

13.    "Occurrence" means:

a.    an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

b.    "Bodily injury" or "property damage" resulting from faulty workmanship, exclusive of the faulty workmanship itself.

* * * *

17.    "Property damage" means:

6

a.   Physical injury to tangible property, including all
resulting loss of use of that property. All such loss
of use shall be deemed to occur at the time of the
physical injury that caused it; or

b.   Loss of use of tangible property that is not
physically injured. All such loss of use shall be
deemed to occur at the time of the "occurrence"
that caused it.

\* \* \* \*

[1-2] at 30, 32; [1-3] at 32, 34; [1-4] at 32, 34.

The 2018-2019 Policy provides the following exclusion:

**EXCLUSION – CONTINUOUS OR PROGRESSIVE
INJURY OR DAMAGE**

This endorsement modifies insurance provided under the
following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to Paragraph 2. Exclusions under
Section I – Coverages, Coverage A – Bodily Injury And
Property Damage Liability and Coverage B – Personal And
Advertising Injury Liability:

This insurance does not apply to:

**Continuous Or Progressive Injury Or Damage**

"Bodily injury", "property damage" or "personal and
advertising injury" which:

7

(1)    First occurred, first began to occur, or is alleged to
       have first occurred;

(2)    Is alleged to be in the process of occurring to any
       degree; or

(3)    Is caused by or alleged to have been caused by
       incremental, continuous or progressive injury or
       damage arising from an "occurrence" or offense which
       first occurred, began to occur, or is alleged to have first
       occurred, prior to the effective date of this policy.

All other terms and conditions remain unchanged.

[1-4] at 49.

The policies also exclude coverage for "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the products-completed operations hazard."[1] [1-2] at 22; [1-3] at 24; [1-4] at 24.

The policies further provide:

22.    "Your work":

       a.    Means:

             (1)    Work or operations performed by you or on
                    your behalf; and
             (2)    Materials, parts or equipment furnished in
                    connection with such work or operations.

---

[1] Although this portion of the policy provides an exception for the work of a subcontractor, it is amended by endorsement to remove this exception.

8

\* \* \* \*

[1-2] at 33; [1-3] at 35; [1-4] at 35.

On August 18, 2017, DCM received a demand letter from Turning Point's attorney regarding DCM's alleged faulty workmanship on a construction project. In December, Turning Point filed a lawsuit against DCM asserting the same claims. However, Evanston did not receive notice of Turning Point's claims and lawsuit until May 15, 2018.

Evanston has moved [52] for summary judgment, contending that it has no duty to defend or indemnify DCM because (1) it first received notice of Turning Point's lawsuit and claims against DCM nearly nine months after DCM knew of the claims and five months after DCM was served with the lawsuit; (2) the claims in Turning Point's lawsuit do not seek damages because of "property damage" caused by an "occurrence" and thus do not fall within the insurance policy; and (3) Turning Point's claims fall within various exclusions.

Turning Point filed its response to Evanston's motion one day late.[2] Although Evanston urges the Court not to consider the response because of that misstep, the Court will nonetheless consider the merits of the response.

## II.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must

---

[2] Evanston moved [22] for the Clerk to enter default as to DCM and Martin, and the Clerk did so. These Defendants subsequently filed an answer and have participated in discovery since then, and Evanston never moved for default judgment against them. Nonetheless, they remain in default.

"view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex Corp.*, 477 U.S. at 331). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific

11

facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 324).

## III.  Discussion

### A.    Notice

Evanston first argues that DCM did not comply with the notice conditions in the 2016–2017 and 2017–2018 policies, entitling it to summary judgment. *See Am. Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1361, 1366 (N.D. Ga. 2010) ("Under Georgia law, 'timely notice to the insurer of a claim or occurrence is a condition precedent to the insurer's duty to defend or pay.'" (quoting *Equitable Life Assurance Soc'y v. Studenic*, 77 F.3d 412, 415 (11th Cir. 1996))). Courts have held that delays of four months to a year are not "as soon as practicable," precluding recovery. *Id.* at 1368 (holding that a nine-month delay was not as soon as practicable); *see also, e.g.*, *Hathaway Dev. Co. v. Ill. Union Ins. Co.*, 274 F. App'x 787, 791 (11th Cir. 2008) (holding that delays of four, five, and eight months in notice were unreasonable as a matter of law).

Here, the policies require notice "as soon as practicable" of an "occurrence," an offense that may result in a claim, or any claim and suit. They further require that DCM immediately send Evanston copies of demands, notices, summonses, or legal papers received in connection with the claim or suit.

Evanston first received notice of the underlying lawsuit and Turning Point's claims nine months after DCM received Turning Point's demands. Although Turning Point contends that notice to Jenkins suffices as notice to Evanston, Jenkins is not Evanston's agent. Rather, he is an independent insurance agent, and is therefore considered an agent of the insured (DCM), not the insurer (Evanston). *See Se. Express Sys. v. S. Guar. Ins. Co. of Ga.*, 482 S.E.2d 433, 435 (Ga. Ct. App. 1997). And because nothing in the language of the policy or anything stamped on the policy gave apparent authority to Jenkins to receive notice, notice to Jenkins did not constitute notice to Evanston. *See id.* at 435–36. Turning Point has not provided any evidence that Evanston took action to establish Jenkins as its agent for receiving notice or that DCM justifiably relied on facts to show Evanston gave Jenkins such

13

authority. Further, there is no evidence that DCM expected notice to Jenkins to suffice as notice to Evanston or that Evanston gave Jenkins actual authority to receive notice on its behalf. Therefore, notice to Jenkins does not suffice. *See Kinard v. Nat'l Indem. Co.*, 483 S.E.2d 664, 667 (Ga. Ct. App. 1997).

Further, even the communication with Jenkins was only via telephone between August 2017 and May 2, 2018. Jenkins received no documents, including the summons and complaint in the underlying lawsuit, within this time period. DCM ultimately waited five months to forward the underlying lawsuit. This delay also constitutes a breach of the notice provision. *See Holbrook-Myers Co. v. Transp. Ins. Co.*, 354 F. Supp. 2d 1349, 1354–55 (N.D. Ga. 2005).

Because DCM did not notify Evanston as soon as possible, Evanston is entitled to summary judgment.

**B.    Property Damage Caused by an Occurrence**

The purpose of comprehensive liability insurance coverage is to provide protection for tort liability due to an insured's mistake, not an

14

insured's shoddy work. *Bituminous Cas. Corp. v. N. Ins. Co. of N.Y.*, 548

S.E.2d 495 (Ga. Ct. App. 2000).

> It is well settled in Georgia that the "property damage"
> requirement in policies such as the one at issue here "limit[s]
> coverage in faulty workmanship cases to instances in which
> the faulty workmanship has damaged other, non-defective
> property or work"; that is, "damage beyond mere faulty
> workmanship" on the work the insured was hired to perform.

*Cowart v. Nautilus Ins. Co.*, No. 4:17-cv-142, 2019 WL 254662, at *6

(S.D. Ga. Jan. 17,2019) (quoting *Taylor Morrison Servs., Inc. v. HDI-*

*Gerling Am. Ins. Co.*, 746 S.E.2d 587, 591 (Ga. 2013)). When a

contractor must repair or replace an element of his own work damaged

by his own faulty workmanship, the standard CGL policy is not

intended to provide protection. *Mass. Bay Ins. Co. v. Sunbelt Directional*

*Drilling, Inc.*, No. 1:07-cv-408-JOF, 2008 WL 8167708, at *3 (N.D. Ga.

Feb. 14, 2008). A claim for the costs of repairing or removing defective

work is not a claim for property damage. *Cowart*, 2019 WL 254662, at

*6.

Here, the underlying lawsuit seeks damages to repair DCM's work

and economic losses. Any claims of economic loss by Turning Point do

not constitute property damage. *Se. Color Lithographers, Inc. v. Graphic Arts Mut. Ins. Co.*, 296 S.E.2d 378, 380 (Ga. Ct. App. 1982).

Further, the policies define an "occurrence" as "'property damage' resulting from faulty workmanship, exclusive of the faulty workmanship itself." The plain language of the contract thus excludes the type of damage from the definition of occurrence.[3]

In response, Turning Point attempts to apply the standard CGL policy definition of "occurrence" to include the damage it sustained. However, the policies at issue contained endorsements modifying the standard definition to exclude the faulty workmanship itself.

Turning Point also contends that it sustained other damage, including exposure to rainfall, which caused flooding, leaks, structural damage, and hazards for visitors. However, it has not provided evidence of such damage. The statements in its brief do not suffice as evidence to defeat a motion for summary judgment. *See Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013). Indeed, the only damage

---

[3] Although Turning Point contends that the language of the contract is ambiguous, it fails to explain how.

16

alleged in the underlying lawsuit was repairs to DCM's allegedly faulty work.

Summary judgment is therefore warranted on this additional basis.

## C.    Exclusions

In addition, several exclusions in the policies demonstrate that Evanston is entitled to summary judgment.

The alleged damages do not fall within the 2018–2019 policy because DCM knew of the underlying lawsuit before that policy began. The policy clearly states that coverage exists for bodily injury or property damage if no insured or employee authorized to give or receive notice knew that it had occurred before the policy period. It further provides that the damage would be deemed known at the earliest time when an insured receives a written or verbal demand—here, August 2017, well before the policy period began in June 2018.

The 2018–2019 policy contains a Continuous or Progressive Injury or Damage Exclusion, which excludes coverage for property damage allegedly caused by incremental, continuous, or progressive injury or

damage arising from an occurrence that began before the policy's effective date (June 2018). At the latest, the property damage at issue here occurred in August 2017.

The policies also have "Your Work" exclusions, barring coverage for property damage to "'your work' arising out of it or any part of it." Turning Point argues that the exclusion does not apply because subcontractors completed most or all of the work on the project at issue. However, the exclusion in the policies is amended by endorsement that removes the subcontractor exception.

Therefore, summary judgment is warranted based on the exclusions.

### D.    Defendants' Affirmative Defenses

DCM and Martin enumerated seven affirmative defenses in their answer: (1) failure to state a claim; (2) estoppel, laches, and/or waiver; (3) absence of legitimate controversy; (4) potential lack of jurisdiction or improper venue; (5) failure to join necessary parties; (6) lack of diversity with proper party plaintiff; and (7) failure to send proper reservation of rights notice. In addition, Turning Point asserts several affirmative

18

defenses of its own: (1) failure to state a claim; (2) unclean hands, estoppel, laches, waiver, or acquiescence; (3) Evanston's or its agents' actions, fraud, and/or legal fault bar its claims; and (4) Turning Point's good faith and reasonable grounds to believe it did not violate Georgia or federal law. However, Turning Point does not raise affirmative defenses in response to Evanston's motion, so the Court need not address the affirmative defenses. *See United States v. Kafleur*, 168 F. App'x 322, 327 (11th Cir. 2006).

## IV.   Conclusion

Accordingly, Evanston's motion [52] for summary judgment is granted. The Clerk is directed to close this case.

IT IS SO ORDERED this 28th day of February, 2020.

Timothy C. Batten, Sr.
United States District Judge

19